

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KINETIC CONCEPTS, INC., KCI LICENSING, INC., KCI USA, INC., WAKE FOREST UNIVERSITY HEALTH SCIENCES, MEDICAL HOLDINGS LIMITED, KCI MANUFACTURING and KCI MEDICAL RESOURCES,<br><br>*Plaintiffs*,<br><br>v.<br><br>BLUESKY MEDICAL GROUP, INC., and SMITH & NEPHEW, INC.,<br><br>*Defendants.*<br><br>AND RELATED COUNTERCLAIMS | Case No. SA:08-CV-00102 WRF |

**JURY VERDICT FORM**

When answering the following questions and filling out this verdict form, please follow the directions provided throughout the form. Your answer to each question must be unanimous. Some of the questions contain legal terms that are defined and explained in detail in the jury instructions. Please refer to the jury instructions if you are unsure about the meaning or usage of any legal term that appears in the questions below.

We, the jury, unanimously agree to the answers to the following questions and return them under the instructions of this Court as our verdict in this case.

## I. INFRINGEMENT

**QUESTION NO. 1 (DIRECT INFRINGEMENT – DEVICE PATENT)**

Have Wake Forest and KCI proven that it is more likely than not that every requirement of the following claims is included in pumps with the RENASYS-F foam dressing kit as sold by Smith & Nephew? Answer "YES" or "NO" for each asserted claim.

|  | For Wake Forest/KCI | For Smith & Nephew |
|---|---|---|
| **'081 Patent** | | |
| Claim 2 | Yes ✓ | No _____ |
| (includes Claim 1) | | |
| Claim 5 | Yes ✓ | No _____ |
| (includes Claim 1) | | |

- 1 -

## QUESTION NO. 2 (INDUCED INFRINGEMENT – METHOD PATENT)

Have Wake Forest and KCI proven that it is more likely than not:

(i) that another directly infringed the following claims;

(ii) that Smith & Nephew took action that actually induced that infringement by another; **and**

(iii) that Smith & Nephew knew or should have known that its action would cause that direct infringement by another?

|  | For Wake Forest/KCI | For Smith & Nephew |
|---|---|---|
| **'651 Patent** | | |
| Claim 42 | Yes ✓ | No ___ |
| Claim 109 (includes 108 and 20) | Yes ✓ | No ___ |
| Claim 116 (includes 20) | Yes ✓ | No ___ |
| Claim 116 (includes 42) | Yes ✓ | No ___ |
| Claim 121 (includes 20) | Yes ✓ | No ___ |
| Claim 121 (includes 42) | Yes ✓ | No ___ |

## III. <u>FINDINGS ON INVALIDITY DEFENSES</u>

The questions regarding invalidity should be answered regardless of your findings with respect to infringement.

**QUESTION NO. 3 – LACK OF WRITTEN DESCRIPTION ('081 PATENT)**

Has Smith & Nephew proven that it is highly probable that the specification of the '081 Patent does **not** contain an adequate written description of the value of "about 0.1 atmospheres" in the pressure range for the vacuum means recited in Claim 1? Answer "YES" or "NO".

| For Smith & Nephew | For Wake Forest/KCI |
|---|---|
| Yes _____ | No ___✓___ |

**QUESTION NO. 4 – LACK OF WRITTEN DESCRIPTION ('651 PATENT)**

Has Smith & Nephew proven that it is highly probable that the specification of the '651 Patent does **not** contain an adequate written description of the "at least 0.11 atm" pressure value for the vacuum source recited in Claim 42? Answer "YES" or "NO".

| For Smith & Nephew | For Wake Forest/KCI |
|---|---|
| Yes _____ | No ___✓___ |

## QUESTION NO. 5 – OBVIOUSNESS

The ultimate conclusion that must be reached on the obviousness question is whether Smith & Nephew has proven that it is highly probable that the claimed invention would have been obvious to a person of ordinary skill in the field at the time the '081 and the '651 Patent applications were filed. In order to properly reach the ultimate conclusion, the following preliminary questions must be answered:

**A.** Did Smith & Nephew prove that it is highly probable that the following are the only differences between the **Bagautdinov articles** (P-1470, P-1471) and the following claims? Answer "YES" or "NO" for each claim.

### '081 PATENT:

**CLAIM 2/1**: The difference is that, in Bagautdinov, the bottom of the "blood suction cup" (Bier cup) has no flexible rim or inflatable cuff to improve the seal between the cup and the skin.

| For Smith & Nephew | For Wake Forest/KCI |
|---|---|
| Yes _____ | No ___✓___ |

**CLAIM 5/1**: The difference stated above for Claim 2/1, and, in Bagautdinov, there is no polymer sheet with adhesive on the surface facing the wound for attaching the cup to the skin.

        For Smith & Nephew         For Wake Forest/KCI

        Yes _____         No  ✓_____


### '651 PATENT

**CLAIMS 42 AND 121/42**: In Bagautdinov, reduced pressure is not maintained at a level of "at least 0.11 atm".

        For Smith & Nephew         For Wake Forest/KCI

        Yes _____         No  ✓_____


**CLAIMS 109/108/20 AND 121/20**: In Bagautdinov, the vacuum system is connected through a hole in the cover, rather than "at" the seal with the skin.

        For Smith & Nephew         For Wake Forest/KCI

        Yes _____         No  ✓_____

**CLAIM 116/20**: The difference stated above for Claims 109/108/20 and 121/20, and, in Bagautdinov, wounds are treated, but none of the wounds is specifically identified as a "pressure sore."

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No   ✓ 

**CLAIM 116/42**: The difference stated above for Claims 42 and 121/42, and, in Bagautdinov, wounds are treated, but none of the wounds is specifically identified as a "pressure sore."

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No   ✓ 

**B.** Did Smith & Nephew prove that it is highly probable that the following are the only differences between the **Chariker-Jeter Publications** (P-1083, P-1451) and the **Chariker Public Use (Treatment of Mr. Aderholt)**, and the following claims? Answer YES or NO for each claim.

### '081 PATENT

**CLAIM 2/1**: The Chariker-Jeter device does not create negative pressure on the area of skin surrounding the wound.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No   ✓ 

**CLAIM 5/1**: The difference stated above for Claim 2/1, and the Chariker-Jeter device does not include open-cell polymer foam.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No  ✓_____

### '651 PATENT

**CLAIMS 42, 109/108/20, 121/42**:   The Chariker-Jeter device uses gauze, rather than a porous synthetic polymer.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No  ✓_____

**CLAIM 116/20**:   The Chariker-Jeter device treats wounds, but none of the wounds is specifically indentified as a "pressure sore."

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No  ✓_____

**CLAIM 116/42**:   The differences stated for Claim 42, 109/108/20, and 121/42, and, the Chariker-Jeter device treats wounds, but none of the wounds is specifically identified as a "pressure sore."

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No  ✓_____

**CLAIM 121/20:**   There are no differences.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No ✓_____

**C.**   Did Smith & Nephew prove that it is highly probable that the following are the only differences between the **Zamierowski PCT publication** (P-1070) and the following claims? Answer "YES" or "NO" for each claim.

### '081 PATENT

**CLAIMS 2/1, 5/1:**   In Zamierowski, the specific negative pressure range of "between about 0.1 and 0.99 atmospheres" is not specified.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No ✓_____

### '651 PATENT

**CLAIMS 42, 116/42, 121/42:** In Zamierowski, the specific negative pressure "of at least 0.11 atm" is not specified.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No ✓_____

**CLAIMS 109/108/20, 116/20, 121/20:** In Zamierowski, the vacuum system is connected through a slit in the top of the cover, rather than "at" the seal with the skin.

        **For Smith & Nephew**        **For Wake Forest/KCI**

        Yes _____        No ✓_____

D. Which of the following factors have been established by the evidence with respect to each of the following claimed inventions: (check those that apply)

|  | '081 PATENT CLAIMS | | '651 PATENT CLAIMS | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | 2 | 5 | 42 | 109 (108/20) | 116 (20) | 116 (42) | 121 (20) | 121 (42) |
| Commercial success of a product due to the merits of the claimed invention, rather than due to advertising, promotion, salesmanship of features of the product and methods other than those recited in a claim | ✓ | ✓ | ✓ | ✓ |  | ✓ |  | ✓ |
| A long felt need for the solution that is provided by the claimed invention | ✓ | ✓ | ✓ | ✓ |  | ✓ |  | ✓ |
| Copying of the claimed invention by others | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Unexpected and superior results from the claimed invention over the closest prior art | ✓ | ✓ | ✓ | ✓ |  | ✓ |  | ✓ |
| Acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention | ✓ | ✓ | ✓ | ✓ |  | ✓ |  | ✓ |
| Surprise, initial skepticism, or disbelief regarding the claimed invention | ✓ | ✓ | ✓ | ✓ |  | ✓ |  | ✓ |

## QUESTION NO. 6

After consideration of the answers to the preliminary questions above, do you find that Smith & Nephew has proven that it is highly probable that the inventions set forth in the following claims of the '081 Patent and the '651 Patent would have been obvious to a person of ordinary skill in the field at the time the Patent applications were filed? Please answer YES or NO for each claim.

|  | For Smith & Nephew | For Wake Forest/KCI |
|---|---|---|
| **'081 Patent** | | |
| Claim 2/1 | Yes _____ | No ✓ |
| Claim 5/1 | Yes _____ | No ✓ |
| **'651 Patent** | | |
| Claim 42 | Yes _____ | No ✓ |
| Claim 109/108/20 | Yes _____ | No ✓ |
| Claim 116/20 | Yes _____ | No ✓ |
| Claim 116/42 | Yes _____ | No ✓ |
| Claim 121/20 | Yes _____ | No ✓ |
| Claim 121/42 | Yes _____ | No ✓ |

*If you have answered YES for any of the claims in response to Questions 1-2, please answer the following questions. If you have answered NO to all claims in response to Questions 1-2, skip the remaining Questions, and please sign and date the form on the last page.*

## IV. FINDINGS ON DAMAGES

**QUESTION NO. 7 (KCI DAMAGES ONLY – LOST PROFITS)**

What lost profits, if any, did KCI show it more likely than not suffered as a result of sales that it would, with reasonable probability, have made but for Smith & Nephew's infringement? *This amount should not include any amount that you may award to Wake Forest in response to Question 10 below.*

$ __901,680__

**QUESTION NO. 8**

If you entered an amount in response to Question No. 7, what percentage of Smith & Nephew's sales did you find KCI would have made but for the infringement?

__65__ percent

**QUESTION NO. 9 (KCI DAMAGES ONLY – REASONABLE ROYALTY)**

For those infringing sales for which KCI has not proved its entitlement to lost profits, what amount has it proved it is entitled to as a reasonable royalty?  **This amount should not include any amount that you may award to Wake Forest on Question 10 below.**

$ 142,800

Please state the royalty rate you applied above:

Royalty Rate: 10 %

**QUESTION NO. 10 (WAKE FOREST DAMAGES ONLY – REASONABLE ROYALTY)**

What amount has Wake Forest proved it is entitled to as a reasonable royalty?  **This amount should not include any amount that you awarded to KCI.**

$ 185,640

Please state the royalty rate you applied above:

Royalty Rate: 7 %

You have now reached the end of the verdict form and should review it to ensure it accurately reflects your unanimous determinations. The Presiding Juror should then sign and date the verdict form in the spaces below and notify the marshal that you have reached a verdict.

The Presiding Juror should retain possession of the verdict form and bring it when the jury is brought back into the courtroom.


Date: __3/9/10__                    **Initials of Foreperson:** _____